### The PEOPLE of the State of Colorado, Complainant,

v.

### Stephen Anthony HODGE, Attorney–Respondent.

### No. 87SA58.

Supreme Court of Colorado, En Banc.

Feb. 8, 1988.

George S. Meyer, Deputy Disciplinary Prosecutor, Denver, for complainant.

Stephen Anthony Hodge, Denver, pro se.

QUINN, Chief Justice.

In this grievance proceeding the respondent, Stephen Anthony Hodge, was charged with two counts of professional misconduct in a complaint filed with the Grievance Committee. A hearing board of the Grievance Committee found by clear and convincing evidence that the respondent had engaged in various acts of professional misconduct. The hearing board recommended that the respondent be suspended for one year and one day, but that the respondent be permitted to apply for automatic reinstatement after the expiration of thirty days of suspension upon compliance with several conditions. A hearing panel of the Grievance Committee approved the board's findings and recommendation. We now adopt the findings of the Grievance Committee with respect to the respondent's professional misconduct, but reject the Grievance Committee's recommendation that the respondent be permitted to apply for automatic reinstatement upon the expiration of thirty days of suspension. We instead enter an order of suspension for one year and one day.

I.

The respondent was admitted to the practice of law in the State of Colorado on May

17, 1977, and is subject to the jurisdiction of this court and its Grievance Committee. The complaint filed with the Grievance Committee involved two counts of professional misconduct, one arising out of the respondent's representation of Dorothy Masden in a medical malpractice case and the other based on the respondent's representation of Elizabeth and Rudolph Lunk with respect to allegedly overdue mortgage payments on their house.

A hearing on the allegations of the complaint was scheduled on October 10, 1986. Shortly before the commencement of the hearing the respondent telephoned the hearing board from the state of Missouri. He informed the board that he mistakenly believed the hearing was scheduled for October 20, 1986, and did not become aware of his mistake until that very morning. The respondent explained to the hearing board that he was preparing to mail an unconditional admission of misconduct to the Deputy Disciplinary Prosecutor. The respondent, with the concurrence of the hearing board and the Deputy Disciplinary Prosecutor, expressly admitted that his conduct in both the Masden and Lunk cases violated the Disciplinary Rules of the Code of Professional Responsibility. The board accepted the respondent's admission and permitted him to listen to the testimony of witnesses over a speaker phone and to cross-examine the witnesses over the speaker phone. A hearing on mitigation was scheduled for October 20, 1986, and the respondent attended that hearing.

### A.

The hearing board of the Grievance Committee made the following findings in connection with the respondent's representation of Dorothy Masden in the medical malpractice case. In November 1981 Masden retained an Ohio attorney to represent her in a medical malpractice action against Richard C. Fisher, M.D., arising out of a surgical procedure performed in Colorado on Masden's foot in August 1981. In August 1982 Masden entered into a contingent fee contract with the respondent to represent her in the malpractice case. Masden was medically evaluated in both Ohio and

Colorado, and on August 8, 1983, the Ohio attorney informed her that he could do nothing further due to inadequate medical information. The Ohio attorney also informed the respondent to file suit immediately in order to avoid the running of the statute of limitations.

In August 1983 the respondent filed in the District Court of Mesa County a complaint against Dr. Fisher. The respondent, however, did not effect service on the doctor due to alleged difficulties in locating him and an apparent lack of information concerning his negligence. In October 1984, following a notice of possible dismissal for lack of prosecution, *see* C.R.C.P. 121, sec. 1–10, the respondent was able to retain the case on the docket by filing an appropriate motion, but never informed Masden of the possible dismissal.

In July 1984 Masden, unhappy with the lack of progress on her case, requested a Denver attorney, Steven Berkowitz, to represent her in the malpractice action. Mr. Berkowitz requested Masden to forward her file to him for review. Masden made several attempts to obtain the file from the respondent, as did Berkowitz's law firm, but without success. Berkowitz was thus unable to evaluate Masden's case.

Masden filed a request for investigation with the Grievance Committee on December 24, 1984. The respondent answered the request on January 4, 1985, and also informed Masden that he was asserting a general lien on her files for money due and owing to him. On February 17, 1985, the respondent mailed to Masden for her signature a motion authorizing his withdrawal from the case. Masden signed the motion and returned it to the respondent, but the respondent, claiming that he never received the motion, failed to file the motion to withdraw.

On August 27, 1985, the respondent assured a grievance committee investigator that he would send Masden her file. He did not do so. In December 1985 Masden sent a letter to the District Court of Mesa County and included a copy of the motion to withdraw which the respondent had

mailed to her in February 1985. In her letter Masden informed the court that she did not desire the respondent to represent her and had been attempting to discharge him since July 1984. On September 13, 1986, Masden finally received her file from the respondent, but some of her medical records and x-rays were missing from the file.

The Grievance Committee, based on the foregoing findings, concluded that the respondent's conduct constituted grounds for discipline under C.R.C.P. 241.6 and violated the following Disciplinary Rules of the Code of Professional Responsibility: DR 1–102(A)(1) (violation of a disciplinary rule); DR 2–110(B)(4) (failure to withdraw when discharged by client); DR 6–101(A)(3) (neglect of a legal matter entrusted to the lawyer); and DR 9–102(B)(4) (failure to promptly deliver to the client properties of the client in possession of the lawyer).

### B.

The second count of the grievance complaint arose out of the respondent's representation of Elizabeth and Rudolph Lunk on a matter involving mortgage payments on their house. The Grievance Committee found that in late 1983 and early 1984 the Lunks made several mortgage payments to Lomas & Nettleton Company but the payments were not properly credited to their account, and that the mortgage company refused to accept further payments until the allegedly overdue payments were made.

The Lunks contacted the respondent in July 1984 and delivered to him all their records pertaining to the house and the mortgage payments previously made. On August 1, 1984, the Lunks gave the respondent $652 in cash, which was the amount of one mortgage payment, and five personal checks, each in the amount of $652, to be forwarded to Lomas & Nettleton Company before the end of calendar year 1984. The respondent planned to temporarily withhold further monthly payments in an effort to obtain a better bargaining position in dealing with the mortgage company.

In August 1984 the respondent was in an automobile accident and was unable to return to work for several weeks, and in December of that year he closed his office due to a general decline in the economy. The respondent, however, did not inform the Lunks that he had closed his office, nor did he give the Lunks any directions about contacting him. Although he did mail the Lunks' personal checks to Lomas & Nettleton Company prior to the end of calendar year 1984 in order to preserve the Lunks' ability to deduct the interest portion of these payments on their income tax, he did not send to the Lunks a copy of his transmittal letter to the mortgage company. As a result, the Lunks were not aware of what action the respondent had taken in connection with their personal checks deposited with him.

In January 1985 Mrs. Lunk went to the respondent's office and discovered that he was no longer there. At about the same time Mrs. Lunk also discovered that her niece had apparently stolen money from her and had also disappeared. The combined shock resulting from these discoveries resulted in Mrs. Lunk's hospitalization.

The Lunks subsequently consulted with another lawyer in Grand Junction, Bryce Palo, who was able to contact the respondent by telephone and requested that the Lunks' records be turned over to him. The respondent informed Palo that he would not send any documents to him until the Lunks met with him on the matter of fees owing him for his legal services. On February 11, 1985, Palo wrote the respondent and requested the respondent to transmit all documents pertaining to any legal matters involving the Lunks. Enclosed in the letter was a Notice of Dismissal and Authorization for Release signed by Mr. and Mrs. Lunk. Palo's letter was returned as undeliverable. A similar letter was mailed to a different address on March 14, 1985, but again no response was received to this letter.

The respondent told the hearing board that he did not intend to condition the transmittal of the Lunks' file to Palo on receipt of actual payment from the Lunks,

but rather intended to condition the return of the file on the Lunks' agreement to a satisfactory payment plan. The hearing board, however, noted that Palo's understanding of the respondent's position was that no papers would be provided to Palo until the Lunks paid the respondent in full. Indeed, to date, the respondent has never billed the Lunks for his services, nor has he taken any legal action to recover any fees allegedly owed him by the Lunks. The hearing board found that Palo, due to the respondent's refusal to transmit the Lunks' records to him, was unable to represent the Lunks in their controversy with Lomas & Nettleton Company.

The hearing board, based on the above findings, concluded that the respondent's conduct violated the following disciplinary rules of the Code of Professional Responsibility: DR 1–102(A)(1) (violation of a disciplinary rule); DR 6–101(A)(3) (neglect of a legal matter entrusted to the lawyer); and DR 9–102(B)(4) (failure to promptly deliver to the client properties of the client in possession of the lawyer).

## II.

In its recommendation of discipline, the hearing board noted that the respondent had not been previously disciplined. The board pointed out, however, that the respondent's misconduct did cause injury to his clients. Both Masden and the Lunks were unable to receive the benefit of another attorney's evaluation of their cases as a result of the respondent's refusal to return their respective files to them or to transmit those records to an attorney pursuant to the client's direction. In addition, the hearing board emphasized that Masden has not yet received some of her medical records and x-rays and that Mrs. Lunk had required hospitalization due to an emotional breakdown upon finding that the respondent had abandoned his law office.

The hearing board recommended that the respondent be suspended from the practice of law for a year and a day but that he be allowed to apply for automatic reinstatement after the first thirty days of the suspension upon the following conditions:

(1) that he return to Masden all the medical records and x-rays in his possession or control and that he provide the Disciplinary Prosecutor with satisfactory evidence that he complied with this condition; (2) that he reimburse Mrs. Lunk the amount expended by her for hospitalization and other medical costs directly attributable to her discovery of the respondent's abandonment of his practice, or provide the Disciplinary Prosecutor with a reasonable written plan for such payment; and (3) that he pay the costs of this action in the amount of $1,962.33. A hearing panel of the Grievance Committee approved the findings and recommendation of the hearing board. The Disciplinary Prosecutor has filed an exception to the Grievance Committee's recommendation of discipline, arguing that the recommended automatic reinstatement after thirty days upon compliance with the conditions is unduly lenient.

## III.

Although we accept the findings of the Grievance Committee, we reject its recommendation of discipline as unduly lenient. Suspension is generally an appropriate sanction when the lawyer fails to perform services for a client, or engages in a pattern of neglect, and in either instance causes injury or potential injury to the client. ABA Standards for Imposing Lawyer Sanctions § 4.42 (1986); see People v. Lloyd, 696 P.2d 249 (Colo.1985); People v. Baca, 691 P.2d 1136 (Colo.1984); People v. Dutton, 629 P.2d 103 (Colo.1981). In this case the respondent knew that he was not performing services requested by Masden and the Lunks, but did nothing to remedy the situation. As the hearing board stated in its report, the respondent's misconduct resulted in injury to his clients in several ways and, in the case of Mrs. Lunk, resulted in an emotional breakdown requiring medical treatment and hospitalization.

The respondent's misconduct was nothing less than a callous disregard of his professional responsibility to both Masden and the Lunks. The deplorable nature of such misconduct warrants a suspension for no less than one year and one day. To

permit the respondent to apply for automatic reinstatement after the expiration of only thirty days of the suspension period would unduly depreciate the seriousness of his misconduct in the eyes of both the public and the legal profession.

The respondent is accordingly suspended from the practice of law for the period of one year and one day, effective thirty days after the entry of this order. During the thirty days prior to the effective date of this order, the respondent is ordered to wind up all legal affairs in compliance with C.R.C.P. 241.21(a). Any petition for reinstatement after the expiration of one year and one day must be accompanied by evidence of full compliance with C.R.C.P. 241.-22 and the following special conditions as well: (1) that the respondent has timely returned to Masden all her medical records and x-rays in his posession or control; (2) that the respondent has reimbursed Mrs. Lunk all hospitalization and other reasonable medical costs directly attributable to her emotional breakdown after discovering that the respondent had abandoned his law practice in Grand Junction; and (3) that the respondent has paid the costs of this proceeding in the amount of $1,962.33 by tendering such sum to the Supreme Court Grievance Committee, 600 Seventeenth Street, 500–S Dominion Plaza, Denver, Colorado, 80202.